STATE OF VERMONT

ENVIRONMENTAL COURT

In re: Appeal of Casella Waste        }
Management, Inc. and  E.C.            }
Crosby & Sons, Inc.                   }    Docket No. 110-7-99 Vtec
                                      }
                                      }

Decision and Order

Appellants Casella Waste Management, Inc. (Casella) and E.C.Crosby & Sons, Inc., appealed from two conditions imposed by a decision of the Zoning Board of Adjustment (ZBA) of the Town of Manchester granting permission with conditions for a new access road to a solid waste transfer station. Cross-Appellants Sally Mole, Dale Gulbrandsen, Patricia A. Trudel, Robert and Jeanne Williams, Kurt and Dorothea Ax, and Ruth Fuller White also appealed from the decision; Patricia A. Trudel later withdrew as a party. Neighbors Perk and Randall Perkins intervened as interested parties, as did the Town of Sunderland. Appellants are represented by John R. Ponsetto, Esq. and Robert F. O= Neill, Esq.; Cross-Appellants are represented by David W. Gartenstein, Esq.; Intervenors Perkins are represented by Robert E. Woolmington, Esq.; Intervenor Town of Sunderland is represented by Mary C. Ashcroft, Esq.; and the Town of Manchester is represented by Gary G. Ameden, Esq.

The matter was put on inactive status by agreement of the parties while an Act 250 permit for the access road was under consideration by the Waste Facility Panel of the Environmental Board. Pretrial issues were addressed on summary judgment, after which the Court accepted extensive prefiled testimony and held three days of evidentiary hearings were held in this matter before Merideth Wright, Environmental Judge, who also took two site visits. One site visit was held with the parties while the leaves were on the trees, and another was held by agreement with only some party representatives after the leaves were off the trees in the late fall of 2001. The parties were given the opportunity to submit written requests for findings and memoranda of law, the schedule for which was extended for four months at the request of the parties. Upon consideration of the evidence, the site visit, and the written memoranda and proposed findings, the Court finds and concludes as follows.

Appellant Casella owns and operates a solid waste transfer station located on a 63-acre parcel of land in the Farming and Rural Residential zoning district in the Town of Manchester[1]. The present access to it is onto River Road. At present, vehicles have access from the site southerly and westerly to Route 7A via Sunderland Farm Road and Hill Farm Road in the Town of Sunderland. Vehicles also have access to Route 7A or Route 7 by traveling northerly via River Road to Richville Road in the Town of Manchester, thence by Depot Street (Routes 11/30) either easterly to Route 7 or westerly to Route 7A in Manchester Center.

The application before the Court involves a proposed alternate access road to the transfer station, over property that had been owned by Appellant E.C.Crosby & Sons, Inc. when this application was filed, but has since been purchased by Casella. All further references in this decision will be to > Appellant= or to > Casella= in the singular.

The transfer station is a pre-existing non-conforming use in the Farming and Rural Residential District and the Transit Commercial Overlay District. It processes up to 19,600 tons of solid waste per year. Appellant provides residential and commercial pickup of solid waste and recyclables in the region. Appellant uses five different types of trucks in its operations. Four types of trucks (roll-offs with and without trailers, commercial packer and recycling trucks, and residential packer and

recycling trucks) are used to pick up solid waste from customers and bring it to the transfer station for processing. The remaining type of truck (transfer trailer or tractor-trailer truck) is used to transport solid waste to an out-of-town disposal facility. The transfer trailers and roll-offs with trailers weigh up to 80,000 pounds, the roll-offs without trailers weigh up to 60,000 pounds, the commercial packer trucks weigh from 35,000 to 60,000 pounds, and the residential packer trucks weigh from 23,000 to 35,000 pounds. The roll-offs and packer and recycling trucks leave the facility empty in the mornings and return full from their pick up routes during the day to the transfer station. Individual trucks may make more than one round trip in a day. The transfer trailers leave the facility in the midday hours full to travel to disposal facilities, and return to the facility empty.

Appellant Casella proposes to construct a new alternative access road, 2,364 feet in length and thirty feet in width (consisting of 12-foot-wide traveled lanes and three-foot-wide shoulders in each direction), providing access directly to Route 7A from the transfer station.

Appellant proposes to install a gate near the Route 7A end of the access road which will be closed except during the operating hours for the transfer station, and to post a sign near the Route 7A gate prohibiting unauthorized vehicles from using the access road.

Appellant proposes to install and maintain landscaping for the access road as provided in Permit #91-01-004 as granted by the Town of Manchester ZBA June 16, 1999. Appellant also proposes to comply with the conditions and requirements of the following permits and approvals, unless otherwise amended: the May 16, 2000 Act 250 Land Use Permit #8B0301-7-WFP issued by the Waste Facility Panel of the Environmental Board; the March 30, 1999 Wetlands Conditional Use Determination #RU99-0010 issued by the Agency of Natural Resources; the February 24, 1999 Letter of Intent issued by the Vermont Agency of Transportation; the February 19, 1999 Permit #199900147 issued by the U.S. Army Corps of Engineers; and the February 5, 1999 Stream Alteration Permit #WQ-1-208 issued by the Agency of Natural Resources.

As proposed, the access road will have no adverse effect on the capacity of existing or planned community facilities, as it does not affect the capacity of the fire, police, school, sewer or water services of the town. ' 3.3(1). Its effect on the roadway capacity is considered under the criterion for traffic on roads and highways in the vicinity. ' 3.3(3). It will also have no adverse effect on the utilization of renewable energy resources. ' 3.3(5).

Appellant proposes the following limitations on truck traffic to and from the transfer station. Appellant proposes that all tractor trailers (including transfer trailers) and all roll-offs (with or without trailers) be prohibited from using the River Road access, that is, that these types of trucks be required to use the new access directly onto Route 7A. Appellant proposes that all truck traffic be prohibited from using Sunderland Hill Road and Hill Farm Road, that is, that any type of truck permitted to use the River Road access shall travel northerly on River Road from the facility.

Appellant proposes that the total daily truck traffic entering or leaving the transfer station be limited to an average of 42 one-way trips per day with a maximum of 48 one-way trips per day. Appellant proposes to file truck traffic count reports with the District Environmental Coordinator and with the Town of Manchester Zoning Administrator on a quarterly basis. Appellant proposes that the total daily truck traffic entering or leaving the transfer station by the River Road access be limited to an average of 4 one-way trips per day with a maximum of 6 one-way trips per day. Appellant proposes that no more than 16 one-way truck trips per day shall travel to or from the new access road north on Route 7A through the Village of Manchester.

Appellant proposes that all truck traffic be prohibited on River Road between the hours of 5:00 p.m. and 6:00 a.m. Appellant proposes that transfer trailers shall not enter or leave the transfer station between the hours of 9:00 p.m. and 7:00 a.m., and expects that under most conditions the

transfer trailer trucks will in fact travel to and from the facility in the midday weekday hours, that is, between 10:00 a.m. and 2:00 p.m. Appellant proposes that roll-off trucks (with or without trailers) shall not enter or leave the transfer station between the hours of 9:00 p.m. and 6:00 a.m. Appellant proposes that commercial packer trucks shall not enter or leave the transfer station between the hours of 9:00 p.m. and 4:00 a.m., and that no more than two such trucks may operate in the hour from 4:00 to 5:00 a.m. Appellant proposes that commercial recycling trucks and residential packer trucks shall not enter or leave the transfer station between the hours of 9:00 p.m. and 5:00 a.m., and that no more than two such trucks may operate in the hour from 5:00 to 6:00 a.m. Appellant expects that very little truck traffic will use the access road on weekends, on the order of approximately one or two trips per weekend on approximately ten weekends per year, but Appellant does not propose a specific limit for such truck traffic on weekend days.

Sunderland Hill Road, Hill Farm Road and River Road are relatively narrow rural roads, with limited sight distances in places due to curves and dips in the roadways. Agricultural and residential uses predominate along these roads. Some of the older houses, especially on Sunderland Hill Road and Hill Farm Road, were built prior to the advent of the internal combustion engine and are located very close to the current roadway. These residences experience a serious noise and vibration problem from the largest types of trucks from the facility passing by within a few feet of the building, especially when the tractor-trailers left the facility at 3:00 a.m. and at 6:00 a.m. on a former schedule. At least one of these older houses is in use as an inn or bed-and-breakfast lodging. There is barely enough room for two tractor-trailer trucks to pass each other safely in places on these roadways. These more rural roadways are also used by people on horseback, bicyclists, rollerbladers, and pedestrians in preference to travel on Route 7A. The surface of these more rural roadways is deteriorating faster than planned for its maintenance, due to its use by heavy truck traffic. With respect to its effect on relieving the more rural roads in Manchester and Sunderland of the heavy truck traffic from the facility, the proposed access road represents an improvement to the public safety and convenience.[2]

On the other hand, Route 7A is a major connector roadway for the area. It carries approximately 5,576 vehicles per day (based upon the most recent August 2001 count), of which approximately 295 are medium trucks (in FHWA classifications 4-8[3]) and 25 are heavy trucks (in FHWA classifications 9-13[4]). Rerouting Appellant=s traffic to Route 7A via the access road is proposed to add four medium truck trips (two round trips) and 12 heavy truck trips (six round trips) per day to the traffic traveling on Route 7A to the north of the access road. Rerouting Appellant=s traffic to Route 7A via the access road is proposed to shift the 22 medium truck trips (11 round trips) already traveling on Route 7A southwards from Hill Farm Road, to travel southwards as well on the short segment of Route 7A between the access road and the Hill Farm Road intersection. Mixed residential, commercial lodging and restaurant, and other roadside commercial uses occur along Route 7A, including many large and elegant homes in the historic areas of the Village of Manchester. Tourist-related uses such as lodging and restaurants are particularly in demand on weekends.

At the location of the proposed access road, Route 7A is three lanes in width (one southbound downhill lane, and two northbound uphill lanes), including a slow vehicle uphill lane (so-called truck lane) capable of accommodating the slow-moving trucks leaving the facility and turning right. The sight distances available to traffic traveling on Route 7A at the access road intersection, and those available to traffic entering Route 7A from the access road, are better than those required by the standards of the Vermont Agency of Transportation and of AASHTO. The intersection of the access road with Route 7A will be able to operate safely and at a level of service B, representing relatively minor delays.

Route 7A is rated to accommodate trucks weighing 80,000 pounds. North of the intersection beyond the hill are two areas, one on either side of the road, at which trucks and other vehicles can pull over and rest. Route 7A is also used during the school year by school buses, which are

slow to accelerate up the hill and which cause traffic to stop or back up temporarily along the roadway.

Under present conditions, based on traffic counts done at night in 1999, some medium and heavy trucks drive along the stretch of Route 7A near the access road between the hours of midnight and 6:00 or 7:00[5] a.m., ranging from a low of 9 to a high of 37 such trucks from midnight to early morning. In the hour between 7:00 and 8:00 a.m., from a low of 11 to a high of 28 medium and heavy trucks passed by this stretch of Route 7A. Neither the residents at the Mole/Gulbrandsen residence nor the residents at the North Shire Motel have experienced this nighttime and early morning truck traffic as creating excessive noise in the past. Cross-Appellants are most concerned[6] about an increase in nighttime and early morning noise that could cause sleep disturbances, adversely affect the character of the area, and reduce their property values.

Under the proposal, a maximum of four residential or commercial packer trucks will travel on the access road before 6:00 a.m.: two in the 4:00 to 5:00 hour and two in the 5:00 to 6:00 hour. None of the heavier trucks will be using the access road prior to 6:00 a.m. and no tractor-trailers before 7:00 a.m. Weekend usage is expected to be substantially less. Given the pattern of usage conditions proposed by Appellant, the proposed usage of the access road will not cause noise that is significantly different from or greater than the existing noise along the roadway, and should not increase the degree of annoyance or sleep disruption experienced by people using any of the nearby properties. However, we note that Appellant has stated this proposal in terms of the times at which the trucks will leave the facility, which is an insufficiently clear standard to eliminate any stacking or waiting of vehicles at the Route 7A intersection with the access road. Therefore, to protect the residents nearest the intersection of the access road with Route 7A, it will be necessary to specify that the morning time limitations for trucks leaving the facility must be measured from the time at which the trucks begin to travel on the access road at the facility end of the access road; that the evening time limitations for trucks leaving the facility must be measured from the time at which the trucks begin to travel on Route 7A at the end of the access road; that the morning time limitations for trucks arriving at the facility must be measured from the time at which the trucks enter the access road from Route 7A; and that the evening time limitations for trucks arriving at the facility must be measured from the time at which the trucks arrive at the facility end of the access road. Trucks also must be specifically prohibited from waiting on the access road for a time limitation to occur. Moreover, additional early-morning and late-evening limitations should be imposed on weekends, when the tourist demand for lodging is higher, and when residents may be expected to spend more time at home.

The access road is expected to be used for an average of 38 one-way truck trips daily, of which 22 (eleven in and eleven out) will turn to or from the south on Route 7A and of which 16 (eight in and eight out) will turn to or from the north on Route 7A and will travel to or through the Village of Manchester. An average of four one-way truck trips daily will continue to travel on River Road. None of the trips traveling on River Road or turning south on Route 7A will be the heaviest trucks, that is, the tractor-trailers or the double roll-offs.

The eight round trips traveling to the north will be distributed as four tractor-trailer round trips, two double roll-off round trips, and two other truck round trips, such as commercial or residential packer trucks. Only the tractor-trailer trips and some of the roll-off trucks will represent new truck traffic going through the Village of Manchester on Route 7A, as the other trucks represent local pickups for area residences and business that are taking place under existing conditions and will continue with the new access road. Under existing conditions, tractor-trailer trucks and other heavy trucks or vehicles with loud engines such as dump trucks, tour buses, and school buses, travel on Route 7A through the historic section of the Village of Manchester, at least in the early morning and workday hours. Under existing conditions, commercial and residential packers and some roll-off trucks make local pickups at area retail businesses and restaurants in the early morning hours before those businesses open for business, while their parking lots are available for the trucks to maneuver as necessary to empty dumpsters and to pick up roll-off containers.

Route 7A makes an oblique right turn towards Manchester Center, passing between the library and the 1811 House, an inn occupying an historic complex of buildings. The roadway has essentially no shoulders at this location. Because early morning and daytime heavy truck and bus traffic already passes at this location, the addition of up to eight round trips will not adversely affect the traffic or the character of the area in the early morning or daytime.

However, any substantial addition of nighttime tractor-trailer or roll-off traffic passing at this location would be a potential detriment to the overnight guests at the 1811 House and to other residents adjacent to Route 7A in the historic village area. We find that the proposed schedule for the access road prevents tractor-trailers and roll-off truck traffic from passing at this location coming from the facility from about 9:30 p.m. to about 6:30 a.m. (for roll-offs) or 7:30 a.m. (for tractor-trailers), and therefore conclude that the proposed access road will not cause problems from noticeable noise and vibration and will not adversely affect the residents and businesses or the character of the area in the historic village of Manchester.

The access road itself has been designed to minimize any adverse effect on the two streams and associated Class II wetlands on the parcel, when constructed in accordance with the plans and the February 19, 1999 Permit #199900147 issued by the U.S. Army Corps of Engineers; and the February 5, 1999 Stream Alteration Permit #WQ-1-208 issued by the Agency of Natural Resources.

The access road is also designed to cut obliquely through a ridge located between the transfer station and Route 7A, and is landscaped at that cut to minimize the visual disturbance caused by the road in the viewshed of the valley. The access road is at an elevation lower than that of Route 7A, and is designed so that vehicles approaching Route 7A climb at a 5% to 7% grade to the elevation of Route 7A facing and below the bank of the roadway, to a point approximately 100 feet to the north of the intersection of the access road and Route 7A. At that point the access road turns to parallel Route 7A, and then turns again on a level with Route 7A near the intersection of the access road with Route 7A. The result of this design is that the headlights and the noise of vehicles climbing the access road as they approach Route 7A are shielded by the bank of Route 7A from uses such as the North Shire Motel or residences near the access road across Route 7A. Because vegetation at the level of Route 7A will shield from Route 7A the part of the access road running parallel with Route 7A, the headlights of trucks making the turns will not sweep across or cause glare to fall on either the traffic on Route 7A or on the motel units. Also, because vehicles will have finished their climb in elevation and will approach Route 7A parallel to the roadway and at the same elevation, the noise of their engines when entering Route 7A is not expected to exceed that of similarly-laden heavy trucks already traveling on Route 7A at that location. This is particularly important when assessing the effect of the noise of such trucks on the residents at the North Shire Motel, located approximately 350 feet farther to the south and somewhat uphill from the intersection of the access road with Route 7A. In addition, the motel units face to the south and east, at an angle away from the access road. The access road has been designed to afford the maximum protection possible to any affected residential areas. ' 6.4.9(2).

The Mole/Gulbrandsen residence is located on a hillside approximately 130 feet in elevation above Route 7A, approximately 550 feet from the access road= s outlet onto Route 7A. A gable end of the roof of the transfer station shop can be seen from the edge of the lawn beyond the residence= s terrace, far in the background of the view from the lawn. The cut in the ridge for the access road, and a limited portion of the access road may be visible from the lawn, but is not expected to be obtrusive in the view, both because of the distance and because of the landscaping proposed for the access road.

Cross-Appellants= main concerns are for the effect on the character of the area, on the health and safety of the residents, and on property values, of the noise and vibration of truck traffic traveling on the access road and on Route 7A between Hill Farm Road and at the turn of Route

7A between the 1811 House and the library at the northerly end of the historic village section of the Village of Manchester. Particular areas of concern are the areas of Route 7A in front of the North Shire Motel, the Mole/Gulbrandsen residence, and the historic village section of the Village of Manchester. Under existing conditions, roll-offs, commercial packer trucks, and residential packer trucks make regular pick ups, frequently in the early mornings, at local inns, restaurants, businesses, schools and residences. In this proceeding Cross-Appellants do not seek to further limit that traffic to the extent that it was already traveling on those roadways at those times under existing conditions. The study made of the sound from traffic at the River Road access to the facility was unable to distinguish between car and truck traffic, between traffic passing by the entrance versus traffic going in and out of the entrance, and between vehicular traffic and an early-morning train. Moreover, the most controversial traffic, that of the transfer trailers at 3:00 a.m., or any of the heavy trucks before 6:00 a.m., will be eliminated in the present proposal.

In the early morning hours at most four commercial and residential packer trucks will have left the access road to make local pickups, approximately one every half hour from 4:00 to 6:00 a.m. Some of these can be expected to travel south on Route 7A and some can be expected to have been following local routes in the historic village area (such as at the Equinox House) under existing conditions. However, even if all four of them go north on Route 7A and even if none of those four routes would have passed the historic village area under existing conditions, they will not cause an adverse effect on public health, safety or convenience or adversely affect the character of the area or the traffic on roads and highways in the vicinity, and will not cause a violation of any of the bylaw standards for noise[7]. In the daytime hours, between approximately 6:30 a.m. and 5:30 p.m., Route 7A is already a heavily traveled roadway, used by heavy trucks and buses, and the daytime traffic from the facility will not add noticeably to the existing perceived noise or vibration.

The value of nearby properties bought and sold in Sunderland and potentially affected by traffic on Route 7A from the facility have not reflected any diminution in value. On the other hand, we do not find the valuation methodology used by the Cross-Appellants= expert to be credible, as it was not based on sales of comparable properties but was instead based on a model that assumed that prospective market behavior would be affected by the access road as if a new landfill, airport or other similarly obtrusive facility was being added to the area. Nothing is being changed about the facility or the area except the routing of existing vehicles onto Route 7A. The market price of all the surrounding property already reflects the presence of the transfer station, and its former gravel pit and landfill uses. The current owners of the North Shire Motel purchased the motel property after the proposal for the access road had been made, and the purchase price took into account the anticipated effect of the access road on the motel= s business prospects. It is only the marginal difference in any surrounding property values due to the access road that should be considered under the standard in the zoning regulations. We find from the evidence that the value of the Mole/Gulbrandsen property and that of other properties in the vicinity will not be adversely affected by the presence of the access road or by its use as limited by the conditions in the present application and this order, at the present level of operation of the facility.

Taking all the evidence into account, as proposed and with the limiting conditions laid out below, the access road will have no adverse effect upon the public health, safety, convenience, and upon property values in the vicinity (' 8.1.1.3), will not adversely affect the capacity of existing or planned community facilities, the utilization of renewable energy resources, traffic on roads and highways in the vicinity, the character of the area or any other provisions of the Town= s ordinances, regulations or bylaws (' 3.3), and is designed to afford the maximum protection possible to any affected residential areas. ' 6.4.9(2).

Based on the foregoing, it is hereby ORDERED and ADJUDGED that the access road as proposed in the revised statement of application and as shown in the exhibits admitted in this proceeding is HEREBY APPROVED, subject to the conditions as imposed by the Zoning Board of Adjustment in the permit appealed from, except as modified by the additional conditions below,

and in particular as to the hours and conditions of operation and volume of traffic allowed to use the access road.

Truck types and routes

No tractor trailers (including transfer trailers) and no roll-offs (with or without trailers) shall use the River Road access to or from the facility; they shall use the new access road directly onto Route 7A. Any truck traffic from the facility permitted to use the River Road access shall travel northerly on River Road to and from the facility; no truck traffic from the facility shall use Sunderland Hill Road or Hill Farm Road, unless necessary to make local pickups on those roads. No more than 16 one-way truck trips per day shall travel to or from the new access road north on Route 7A into or through the Village of Manchester

Truck usage limitations

The total daily truck traffic entering or leaving the transfer station shall not exceed an average of 42 one-way trips per day, averaged over each week, with a maximum of 48 one-way trips in any day. The total daily truck traffic entering or leaving the transfer station by the River Road access shall not exceed an average of 4 one-way trips per day, averaged over each week, with a maximum of 6 one-way trips in any day. No more than 16 one-way truck trips per day shall travel to or from the new access road north on Route 7A into or through the Village of Manchester. Appellant shall record daily truck traffic counts entering and leaving the facility by type of truck, access point, and turning movement, shall maintain the records at the facility; and shall file quarterly reports of this information with the Town of Manchester Zoning Administrator[8].

Hours of vehicle operation

All truck traffic related to the facility is prohibited on River Road between the hours of 5:00 p.m. and 6:00 a.m. Transfer trailers shall not leave the transfer station or enter the access road between the hours of 9:00 p.m. and 7:00 a.m. Roll-off trucks (with or without trailers) shall not leave the transfer station or enter the access road between the hours of 9:00 p.m. and 6:00 a.m. Commercial packer trucks shall not shall not leave the transfer station or enter the access road between the hours of 9:00 p.m. and 4:00 a.m.; no more than two such trucks may make a one-way trip over the access road in the hour from 4:00 to 5:00 a.m. Commercial recycling trucks and residential packer trucks shall not leave the transfer station or enter the access road between the hours of 9:00 p.m. and 5:00 a.m.; no more than two such trucks may make a one-way trip over the access road in the hour from 5:00 to 6:00 a.m. Because only one or two truck trips will need to operate per weekend over approximately ten weekends per year, to protect nearby residential and tourist-related weekend uses, any truck traffic using the access road on weekend days (Saturdays and Sundays) shall be limited to between the hours of 7:00 a.m. to 7:00 p.m.

All morning time limitations for trucks leaving the facility shall be measured from the time at which the trucks begin to travel on the access road at the facility end of the access road; all evening time limitations for trucks leaving the facility shall be measured from the time at which the trucks begin to travel on Route 7A at the end of the access road; all morning time limitations for trucks arriving at the facility shall be measured from the time at which the trucks enter the access road from Route 7A; and all the evening time limitations for trucks arriving at the facility shall be measured from the time at which the trucks arrive at the facility end of the access road. All trucks are specifically prohibited from waiting on the access road or on Route 7A near the access road for a time limitation to occur, whether or not their engines are running.

Appellant shall install a security gate as shown on the plans near the Route 7A end of the access road which shall be closed except during the hours of operation of the facility. Appellant shall post a sign near the Route 7A gate prohibiting unauthorized vehicles from using the access road.

Evidence of unauthorized use of the access road may result in the reopening of this permit before the ZBA as provided in its Condition #39, to consider whether an additional condition should be imposed that the gate shall remain closed all the time, and/or that it shall be fitted with a mechanism such as a magnetic card reader or key pad to operate it remotely by each authorized driver.

Dated at Barre, Vermont, this 5th day of July, 2002.

_____
Merideth Wright
Environmental Judge

---

### Footnotes

[1] An additional parcel of land in the Town of Sunderland is also part of the transfer station property, but is not at issue in this appeal.

[2] The Court in an earlier ruling interpreted public 'convenience,' a term more frequently used in public utility or condemnation cases rather than in zoning cases, to mean whether the proposal is useful to the public, that is, whether it is fitting or suitable to the public need.

[3] These classifications cover Appellant's residential and commercial packer trucks.

[4] These classifications cover Appellant's transfer trailer and double roll-off trucks.

[5] The data refer to 6:00 but also refer to the hour as beginning at 6:00, that is, the hour from 6:00 a.m. to 7:00 a.m.

[6] They have also expressed their continuing concern that, after the access road is built, Appellant will apply for permission to increase the tonnage of solid waste that can be processed at the facility, and thereby will increase the truck traffic using the access road and surrounding roadways from the facility. However, as the Court ruled during trial, no such proposals are before the Court in this case and the analysis in this case must be made only of the application before the Court in the present case.

[7] These standards, which measure noise at the property boundary, apply to stationary sources of noise from the property, and not to vehicles moving through the property boundary when exiting a property.

[8] We note that Appellant proposes also to file such quarterly reports with the District Environmental Coordinator for the Act 250 program, but cannot impose such a requirement in this municipal appeal.